We are done, then. Thank you. The case just argued will be submitted, and I will thank counsel on both sides for your very helpful arguments in this case. All right, so we'll hear argument in the last case on calendar this morning, which is 25-215, Heidi Peck v. United Parcel Service, and we will hear first from Mr. Stegelmeyer. Thank you, Your Honor. Judge Collins, Judge Lee, Judge Fitzwater, Mr. Ritter, may it please the Court. My name is Corey Stegelmeyer. I represent the appellant plaintiff in this case, Heidi Peck. I'd ask to reserve two minutes of my time for rebuttal, if that's okay with the Court. Today, Your Honor, we're asking the Court to review this grant of summary judgment, and we'd ask the Court to just reverse the grant and remand it for a trial. As the Court's aware and has been mentioned earlier, that this is a de novo standard of review. The Court looks at all of the evidence in the record, and the issue that we have in which we had with the district court's ruling is we believe that the evidence wasn't construed in a light most favorable to Ms. Peck as the nonmoving party. And so when that evidence is construed in a light most favorable to Ms. Peck as the nonmoving party, we believe that there are tribal issues of fact that require a trial in this case. And so the Court's well aware of the facts of this case. Ms. Peck was employed by UPS for 17 years without ever having any discipline at all. In fact, up until the day of her termination, she had never been reprimanded, she had never been disciplined, she had never been told that she was doing something wrong. There's no record of that. She received yearly bonuses, and then one day she was terminated. The person who made that determination, Mr. Emerson, in his depositions in the record, Mr. Emerson stated that he decided to terminate Ms. Peck's employment based solely on one report, and that's in the record at 531. He also testified when asked why he didn't do more of an in-depth review of this, why he didn't look at her past disciplinary history, why he didn't look at her employment history, why he didn't do anything else besides... He was aware of the prior problem too, correct, at the time the decision was made? He was, but in his deposition he stated it was based solely on that one report, the second report is the only reason why he made that decision, and he was aware of the prior report. But you sort of can't unring the bell. I mean, he was personally involved in both, was clearly aware of both, was aware that... I mean, the second one was the basis for the decision, but it's in light of the prior incident. It was, Your Honor, but then he also stated that, you know, I don't look at everything, that's why we have the peer review board later. He stated under oath that, my understanding was that the peer review board would look at my decision, if I made a mistake, they would fix it. So Mr. Emerson, the one who is the sole person who made the decision to terminate Ms. Peck, he wasn't convinced that he had a good reason. He said, you know, I think I have a good reason, but let's see what the peer review board says. It goes to the peer review board and they say, she needs to be reinstated, you made a mistake, put her back in her job. And they decide, you know, we're not going to do that, we're going to just ignore what the peer review board says, despite the fact that Mr. Emerson, the person making that decision, making the decision to fire her, stated that he relied on the fact that the peer review board could fix any mistake he made. And so I think that fact alone, Your Honor, draws into question whether there really was a good reason to terminate Ms. Peck. Additionally, Your Honor, as we go further into the record, Ms. Peck provided evidence of two other people who were investigated, who were also business managers, Mr. Reinhart, Mr. Floyd Reinhart, and Mr. Bradley Tolson. Now, the district court, but neither of them had two incidents. We're not sure on that. There's no... We can't speculate. I mean, that's what discovery is for. And if you weren't happy with the discovery you got, you file a motion, you either get it or you get an adverse inference or something. But we can't be saying, well, we got to look what's in the record. And we, looking at the record, we have comparators with one incident and, you know, Ms. Peck with two. Why is that? Why isn't that, as the district court said, enough to say that they're not valid comparators and not similarly situated? Because Your Honor, as a defendant, it's your responsibility. If you want to use something in court in the trial, you have to disclose that. You have to be forthcoming. You have to say, here it is. With Mr. Reinhart, we have their attorneys... We asked specifically for Mr. Reinhart's employment file so we could see if there was more than one incident or what happened. They said, we don't have an employment file for Mr. Reinhart. When I asked Ms. Todd about... If you think that's bogus, then you file a discovery motion and you either get it or you get an adverse interest. But you can't hold this out now. We have to deal with the evidence that would go in that's been presented on the summary judgment record. And they're not similarly situated on that record because she has two and they have one. And the fact that you think it's unfair that you don't have evidence to get from one to two on the comparators is just not something... How can we do anything about that at this point? That's a discovery issue that wasn't litigated. Your Honor, that's because if they don't come forward with the evidence, as the plaintiffs... It's certainly a neutral and valid reason to fire someone that they've, you know, had two instances of serious misconduct that could affect the reputation and customer satisfaction of the company. That's certainly, at phase two, a valid ground. So it goes to pretext at three. And at phase three with pretext, a key issue is comparators and similarly situated and they're not. And it's not their burden. It's your burden on pretext at stage three. No, I understand your position, Your Honor, but... It's not my position. That's the law. That's what we've held. I understand, Your Honor, but also it is their burden to present the evidence that they are going to use in defense of their case. And so if they tell us that we don't have an employment file, then Ms. Todd can't later come in and say, oh yeah, I've looked at Mr. Reinhart's And so if we're being told that they don't have the evidence, then we're entitled to rely on those verified discovery responses that there are no employment files. And so there's no way for us to know whether there was one, whether there was two, whether there was multiples. I mean, Mr. Reinhart could have been investigated five times for all we knew during discovery because they said he didn't have an employment file. Supposed to say he's an equal comparator because we can speculate that maybe he has five? I think, Your Honor, he's a comparator because he was a business manager under Mr. Emerson who was investigated for this exact same reason. And unlike Ms. Peck, Mr. Reinhart said, oh yeah, we do that all the time. I tell him to do that. He's the one who was out on disability at the time of the decision? Or was that the other one? Uh, well, and that's the other issue, Your Honor, is Ms. Alicia Todd. The only evidence we have that he was out on disability is the declaration of Ms. Alicia Todd. Ms. Todd stated during her deposition that she wasn't familiar with Mr. Reinhart. During her inter-declaration, she says, I'm a custodian of records, but the records... But that's just, she's a custodian for purposes of the business records rule and, you know, the hearsay rule and laying an appropriate foundation under the foundation rules. But that's, as the district court said, her ability to do that limited role is distinct from saying she has personal knowledge of Mr. Reinhart and the personnel actions. Those are not inconsistent. Why is, why was the district court wrong in saying that? Because with Mr. Reinhart, she specifically said, I didn't know him. I'm not involved in his case. That's different from the laying the foundations for the business records. I understand the court's position that, the district court's position that she can, we can designate someone to be a custodian of records to come in later and lay those foundations. But the part that the court relied on in her testimony isn't based on any of the business records that she submitted. It's based on her claiming to have personal knowledge. She doesn't say, I went back through and reviewed this. This is later on in her, in her declaration, the discussion of Mr. Reinhart, where she says, Mr. Reinhart was out on disability. Mr. Reinhart was this. Mr. Reinhart was that. But yet during her deposition, when we asked her, Ms. Todd, do you know Mr. Reinhart? No, I was not involved in that case. And we've cited the court to that section in their deposition. And so that is distinct from the business records issue is that she tells us at one stage that she doesn't have that information and then later has that information. And so if she doesn't have that information, then there's a question of fact as to the veracity of her declaration, which creates a tribal issue for the court or for trial, Your Honor. I think there's a lot of issues with the discovery in this case. And I understand the position that, well, how come the plaintiffs aren't running and filing motions to compel? Why didn't we seek a second deposition of Ms. Todd? Why don't we do this? Why don't we do that? I mean, arguably I should have stopped the deposition. I should have said, Mr. Clifton, your witness isn't answering any questions. We're going to get in front of the judge and we're going to have the judge issue an order on this. But at the same time, from my perspective, if a witness says I don't know something, then I should be able to rely on the fact that she doesn't know that. In fact, quite often, and I may have done it in this deposition, I don't recall, but quite often when I have those non-cooperative witnesses, I will tell them, I will say, all right, I understand you don't know this, you don't remember. Are you going to remember when it comes to trial? And this is one of those instances why I say that, because we have Ms. Todd who doesn't know Mr. Reinhart, not involved in that case, not sure why he wasn't terminated, not sure about his, if he'd been investigated however many times. She doesn't know at one stage and then we come for summary judgment and she signs a declaration laying forth in detail everything she knows. And, Your Honor, I think the issue with this being decided on summary judgment, on the comparator issue, is that generally the issue of whether people are similarly situated is something that is a question of fact for a jury. We've cited several cases that says that summary judgment's only appropriate when no reasonable jury can find that the comparators are similarly situated to the plaintiff. And there's the Cornwell versus Electric Centra credit union. There's the McDonald versus Villa Winnetka. There's several others that we've cited in our brief, Your Honor, that we believe that the determination of comparators is something that should go to the trial. There's also other facts we think that show that this was a pretextual reason for terminating Ms. Peck. Were there any motions to compel filed by you in this case? No, Your Honor. Again, when a witness tells me they don't know something, I take them at their face value. They're under oath. I believe that that will prevent them from perjuring themselves later by signing a declaration where they suddenly know what they didn't know. For written discovery in terms of employment files, was there ever a motion to compel production of them or try to figure out why they didn't have it if there was spoliation of evidence? We intended to file a spoliation of evidence prior to the trial, Your Honor, but for purposes of moving forward strategically, we felt that if they wanted to play the game that they didn't have stuff, then we were happy to play that game with them and just assume that they weren't going to document dump on the date on the eve of summary judgment when they suddenly remember, hey, we do have stuff. So let me ask you a question about the state law claim, because you have this contention that she's deprived of the bonus from the decision in October that was delayed until December. How is she injured by that? Because if the decision had been made in October, she'd be equally deprived of the bonus. So I don't see how that, you know, because it's presented as this is a terrible thing, which took the bonus right out of her hands. But if it had been done the way you said it should have been done, she still would have been out of her hands. Yes, Your Honor, the delay is more to show the pretextual reason, the pretext in this, because... No, but you're pleading this as a separate, you know, state law claim. And so I'm just, is there anything to that that's separate from the main claim? So for the state law claim, Your Honor, we believe that because she was wrongfully terminated, had she not been terminated, she would have earned that bonus. The delay goes to the state law implied covenant of good faith and fair dealing, where Ms. Peck was enticed by UPS to remain at her post, to remain... What I'm hearing from you is really the state claim rises or falls with the federal claim. Yes, Your Honor, I would say that. Okay, all right, that's helpful. And I will reserve the rest of my time for rebuttal unless there are any other questions. All right, thank you, Counsel. Thank you, Your Honor. So we'll hear from Mr. Ritter. Good morning, and may it please the Court. My name is Michael Ritter, and I represent Appalachian United Parcel Service in this case. UPS respectfully requests that this Court affirm the summary judgment of the District Court as to all of Mrs. Peck's claims, including her four state law claims involving the breach of contract with regard to the Manager Incentive Program bonus, as well as her claim that her at-will employment was modified by the Employment Dispute Resolution Manual. In addition to that, UPS also asks that the Court affirm District Court summary judgment as to the Title VII claim and to the related sham affidavit issue involved in the motion to strike. Unless the Court has any specific questions about the state law claims, UPS would first like to address the Title VII claim and the pretext issues that have been presented to this Court. The District Court correctly concluded that Ms. Peck failed to meet her burden at this third stage of the McDonnell-Douglas framework to identify specific substantial evidence that Mr. Emerson's decision to terminate her employment was a pretext for sex discrimination. And the sequence of events here is incredibly important to understanding the context in which Mr. Emerson made his decision. My colleague on the other side had stated that Emerson admitted in his deposition that he didn't consider anything except for the second report. However, that second report also includes a reference to Ms. Peck receiving the instruction to stop the record falsification practice at her centers as indicated in the first report. Another important distinction that needs to be made in this case is that the allegation here is based on a wrongful termination decision made by Emerson. Ms. Peck has raised arguments about how Holloway investigated the case and after the termination decision about HR's decision, including the decision by Jill Cootey to not follow the EER peer group recommendation of reinstatement. As it's been alleged, Ms. Peck has not alleged that either of those actions were themselves discriminatory. And so, the focus of the court's inquiry is whether or not there is specific substantial evidence that Mr. Emerson's reason for terminating her employment was a pretext for sex discrimination. To prove pretext, Ms. Peck has relied on two comparators primarily. Mr. Brad Tolson out of the Butte, Montana Center and Floyd Reinhardt out of the Cheyenne Center. As Judge Collins, your questions have referred to before, there was a clear distinction made between the investigations in those centers versus the two investigations with Ms. Peck's centers. Neither Tolson nor Reinhardt were subject to two investigations. And to be clear as to what the record shows, the investigations were not into specific individuals in particular. The investigations were into why are there falsification of records at these particular centers and who's responsible for them. And so, when those centers were investigated, the reports from those investigations indicated where the responsibility laid. And in... So does the record merely show that there was one incident or investigation as to each of the two comparators or does it further show that those were the only ones? So did you establish or present evidence establishing that those were exclusive? So the summary... For those two persons? Correct. The summary judgment record does not have affirmative evidence saying these were the only two investigations that, or sorry, the only investigations that Tolson was part of or that Reinhardt was involved in. But no one said these were exhaustive. We know that there were these, one for each of the two comparators, but there's nothing that tells us whether that was exhaustive. Correct. However, the reason that Emerson gave was that it was his understanding and to his knowledge that it was the only investigations for Tolson and Reinhardt Center, whereas Ms. Peck had two. And so, whether objectively they were subject to multiple investigations, that particular fact does not appear in the record. But when we're looking at Emerson's decision, whether there's pretext being shown by Ms. Peck, that's what the basis for his decision was as per his, as per his deposition testimony. Is it true that UPS does not have personnel files? It's, yes, Your Honor. That seems kind of hard to believe. It's the way in which UPS keeps the records of its employees. And Alicia Todd's declaration actually kind of gets into explaining this. However, because there was no motion to compel, this really wasn't teed up in a way that UPS presented a full-fledged response defending and explaining how it keeps its records. If the court looks to Alicia Todd's declaration, she refers to a couple of facts. First, there are several paragraphs that describe how, for example, FMLA records are kept by a third-party administrator called the Hartford. And what that is reflective of in the fact that UPS has 500,000 employees is that this is not a small mom-and-pop shop where your HR department has employee files for 10 people in a cabinet somewhere. We're talking about a very large corporation, a very large, with a very old company that has managed its employees' records in different files. And so whenever we request files, we have to request them from each system to create the package of what we submit to Housing Council whenever specific files are requested. However, as far as a personnel file, there's not one personnel file for each employee that we just pull that exists as a full and complete file. If Ms. Peck had an issue with that and wanted to present that as an adverse inference to this court or for summary judgment purposes, she stated that, or my colleague stated that their plan was to file a motion for expelliation and disruption at trial. However, the remedy was to file a motion to strike Ms. Todd's declaration in some other way than just the sham affidavit rule. Because that was not done, there was not an opportunity for UPS to come back and explain, or a need for UPS to explain, any sort of inconsistencies there. And more importantly, when we get to the sham affidavit issue, there are a couple of preliminary issues with this particular grounds for reversal. And the first is that Ms. Peck has not shown that there has been any prejudice. Before even getting to the merits of whether the district court properly applied the sham affidavit doctrine here, Peck hasn't disputed that the only factual matter that is implicated as to the sham affidavit rule is whether Reinhart was on FMLA leave. And for two reasons, the court need not even reach the merits of issue number two, because the error ultimately is not prejudicial. For example, if the court agrees that both Tolson and Reinhart are not similarly situated because they were only involved in one investigation as opposed to two, then Mr. Reinhart's FMLA leave status is not an issue that the court needs to address. Second, although my colleague has stated that the only evidence of Reinhart's disability leave was Todd's declaration, the district court found in footnote three that the testimony also came from Mr. Emerson's deposition where he testifies that he had made the decision to actually terminate Floyd Reinhart. However, that termination decision was never processed through HR because UPS has a policy of not disciplining or discharging employees while they are on leave. So even if the court were to grant or were to assume that the district court erred, the only factual matter that would be relevant would be to exclude Todd's declaration testimony about FMLA leave status, which is independently proven by evidence that was not objected to and that was admitted into the summary judgment record below. However, even if the court were to reach the merits of the sham affidavit doctrine, Peck failed to establish that the district court abused its discretion in denying her motion to strike. However, for this particular issue, the standard of review actually flips in terms of the deference given to the trial court. It's an abusive discretion standard rather than a de novo standard. And what that means is even though you view the evidence as to the merits of the claim for summary judgment purposes, in a light most favorable to the non-moving party, whenever there is conflicting evidence that goes to the preliminary question of admissibility for the district court, those conflicts are resolved in terms of deference to the district court's decision. Here there is no inherent contradiction, the district court correctly concluded there's no inherent contradiction between Todd's declaration and her deposition testimony with regard to the FMLA status or with the distinction between being a keeper versus a custodian. There is something to be said about reviewing the evidence in a light most favorable to one side or the other, but one of the things UPS would urge the court to do is whenever there's a characterization of what the record shows, to look to the specific statements that are being made by the witness, whether it's in their deposition or in a declaration. For example, with the keeper versus custodian issue, Ms. Todd stated in her deposition, it is not my role to keep records, that is a function of the compliance group. And in her declaration she says, I am a custodian of record for UPS and I'm familiar with the process for keeping those records and then provides the explanation. And so when you compare the actual statements, there's no unambiguous contradiction that necessarily requires application of the sham affidavit doctrine in this case. Unless the court has any questions about the Title VII issue, UPS will briefly address the state law claims. Starting with the employee dispute resolution claim that UPS breached its contract by not following the recommendations of the peer review group to reinstate her, the Idaho Supreme Court has ruled that if there is an express disclaimer in an employee manual that says this is not a contract, then that will dispel as a matter of law any sort of contract claim between the party in an employment context. Here on the first page of the EDR manual, it expressly states, this is not a contract satisfying this basic tenet of Idaho law to preclude a breach of contract claim as to the EDR process. Going to the MIP bonus claims regarding the Idaho Wage Claim Act, the standard there is whether or not there were wages due, not whether there were wages earned. And the due requirement essentially requires that the plaintiff establish that they were due a particular payment as per the employer's- She's basically conceded in the questioning that that claim stands or falls with the Title VII claim, and do you agree with that? I mean, if you lose on the Title VII claim, then she, the bonus is damages. Potentially yes. I believe that the state law claims are due in large part- But he said if he loses on the Title VII, it just doesn't work under state law because she wasn't going to get the bonus if she applied in October. Correct, Your Honor. Unless the Court has any further questions for me, I'll get the time back to the Court. Thank you, Counsel. We'll hear rebuttal. Thank you, Your Honor. Just briefly on the pretext issue, I would note that the Court has held that that's a fairly low burden. That if there's a question that calls into- Or if there's facts that call into questionability the credibility of the alleged nondiscriminatory reason, then it needs to go back for a trial. In this case, we point to a lot of facts that should have been construed in favor of Ms. Peck. UPS has conceded that there's no evidence in the record saying that these are the only claims. But yet, the Court dismissed it based on that inference that it drew that because UPS had only submitted one, that those were the only ones. So with that, Your Honor, we'd ask that the Court send it back for a trial. All right. Thank you, Counsel. The case just argued will be submitted and thank Counsel for your arguments in this case. And this Court, for this session, stands adjourned. All rise. Thank you. Thank you.
judges: COLLINS, LEE, Fitzwater